The People of the State of New York, Plaintiff, *v.* Nicola Elia, Alias Nick Elia, Alias Bull, Frank Persico, Alias Fat Frank, True Name Frank Grandanica, Simon Zaientz, Alias Sammy Zaientz, Sol Shuster, Louis Iannacone, Anthony Polemeni, Abraham Turk, George Hurwitz and Others, Defendants.

Court of General Sessions of County of New York, March 16, 1940.

*Thomas E. Dewey, District Attorney [Aaron Benenson* and *Eugene H. Clay, Assistant District Attorneys*, of counsel], for the plaintiff.

*Buitenkant & Cohen [Jacques Buitenkant* of counsel], for the defendants Nicola Elia and Louis Iannacone.

*Frank Della Paoli*, for the defendant Frank Persico.

*William P. Thomas* [*Terence J. McManus* of counsel], for the defendant Simon Zaientz.

*McManus, Ernst & Ernst* [*Terence J. McManus* of counsel], for the defendant Sol Shuster.

*F. J. Fortnash,* for the defendant Anthony Polemeni.

DONNELLAN, J. This is a motion made by the district attorney for the trial of the defendants by a special jury, pursuant to the provisions of section 749-aa of the Judiciary Law. The defendants are named in the indictment, of whom eight have been apprehended. They are charged in the indictment with conspiracy and extortion. The motion for a special panel is opposed by the attorneys representing four of the eight defendants.

This is one of the so-called racket cases in which the said defendants are charged with conspiring to commit the crime of extortion, in that they are alleged to have unlawfully, willfully, knowingly and corruptly conspired to obtain money from divers individuals, partnerships and corporations owning and operating retail fruit and vegetable concerns in New York county and elsewhere, by the wrongful use of force and fear induced by threats of the said conspirators to do an unlawful injury to them, namely, to unlawfully and corruptly foment and declare strikes among their employees; to place picket lines in front of and near their places of business; to prevent them from obtaining fruit, vegetables and other supplies, and to prevent the loading of fruit, vegetables and other supplies in Washington Market and elsewhere on trucks owned by the said retail dealers, and to prevent the delivery of the said merchandise in the said trucks to the places of business of the said dealers, and to unlawfully and corruptly use their power to cause the Retail Fruit and Grocery Clerks Union, Locals Nos. 1204 and 924, to hinder and impede the conduct of the business of the said retail dealers and to injure their property.

It is alleged that it was part of the conspiracy to communicate with the retail dealers and demand the payment of certain sums of money to the conspirators, by threats that unless the demands were complied with, strikes would be called; that the places of business of the dealers would be picketed; and the dealers would be prevented from obtaining merchandise in Washington Market and elsewhere. A part of the conspiracy consisted in seizing the control of and in dominating the operations and activities of the Retail Fruit and Grocery Clerks Union, Locals Nos. 1204 and 924, for the purpose of extorting money from the said dealers by means of the threats heretofore referred to. It is also alleged that it was part of the said conspiracy to obtain and retain control and domi-

nation of the operations and activities of the Commission Drivers and Chauffeurs Union, Local No. 202, in so far as the said local had dealings with dealers who came also within the jurisdiction of Locals Nos. 1204 and 924 of the Retail Clerks Union.

It is charged in the indictment that the defendants caused the said Local No. 202 to co-operate with the other locals by threatening to prevent loading of merchandise in Washington Market and elsewhere onto the trucks owned and hired by the said retail dealers, and thereby prevented delivery of fruit, vegetables and other supplies. The indictment also contains thirteen counts charging extortion from various dealers, and sets forth fifteen overt acts.

It is similar to the other racket cases in which a number of defendants have been joined, and in all of which cases the court has ordered special panels. The district attorney intends to call between thirty-five and fifty witnesses, and the trial will undoubtedly last between three and five weeks. The gist of the argument in opposition to the granting of the motion for a special panel is that special or blue ribbon juries are convicting juries. There is no merit to this argument as is evidenced by the recent result in Kings county. The real objection to a special panel seems to be that they are selected after a more careful examination by the commissioner of jurors, and are supposed to be individuals of superior intelligence. Why this condition should work to the detriment of the defendants is something hard to understand. In the briefs submitted, reference was made to the case of *People* v. *Manganaro* in which an application for a special panel was denied. The facts in that case were simple; there was a single defendant and really but two instances of extortion.

The instant case is not a prosecution of labor unions. Some of the defendants happen to be officials of unions, but they are prosecuted not because they are members of any labor union, but because they are alleged to have prostituted the positions of trust reposed in them by the labor unions for their own personal profit.

There is no reason why members of the special panel should have any prejudice against them. Considering the number of defendants and the number of attorneys involved, it would be practically impossible to secure a jury from the ordinary panels called in any of the parts of this court.

The motion for a special panel is granted.