THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* SAMUEL JACOBS, JOSEPH SACCO and JOSEPH GROSS, Defendants.

County Court, Kings County, April 20, 1950.

*Miles F. McDonald, District Attorney (Julius Helfand* and *Aaron Koota* of counsel), for plaintiff.

*Burton B. Turkus* for Samuel Jacobs, defendant.

*Martin P. Krimko* for Joseph Sacco, defendant.

*I. Z. Nathanson* for Joseph Gross, defendant.

GOLDSTEIN, J. The defendants have been indicted for conspiracy to violate section 986 of the Penal Law and for violation of section 986 of the Penal Law. There are eighteen counts in the indictment. All of the crimes set forth in the various counts of the indictment are misdemeanors.

The gist of the first count of the indictment charges a general plan and scheme on the part of the defendants to engage in book-making in violation of section 986 of the Penal Law. Fifteen overt acts are alleged in said count. Counts 2 to 18, charge specific violations of section 986 of the Penal Law.

The District Attorney now makes application for a special jury. The application is vigorously opposed by the defendants who claim that the facts in this case do not warrant the granting of the application.

The defendants claim that they have been indicted for alleged misdemeanors and that in substance the indictment charges them with the crime of book-making which type of case is usually tried in the Court of Special Sessions without a jury; that the issues in this case are simple and not intricate; that special jurors are convicting juries and that the granting of this application will work to their detriment in that to permit a special

jury to hear the issues herein will deprive them of a neutral jury which is their right under the due process clause of both State and Federal Constitutions.

The District Attorney, on the other hand, alleges that this action is one of great importance to the People of the State of New York; that the issues in this action are intricate; that the subject matter of the indictment herein and the issues to be tried have been widely commented upon by widespread newspaper publicity throughout the entire nation; that he has been informed and believes that an appropriate committee of the Congress of the United States is presently engaged in the investigation of gambling and forms of racketeering in connection therewith. It is his contention therefore, that this widespread publicity and from the nation-wide interest concentrated on the subject matter of this indictment, that an ordinary jury cannot, without delay and difficulty, be obtained to try the issues arising herein and that the due, efficient and impartial administration of justice in this case would be advanced by the trial of the issues herein by a special jury.

The question to be determined by the court on this application is whether in its sound discretion the court should grant or deny this application.

A bare statement by the District Attorney of the provisions of subdivision 4 of section 749-aa of the Judiciary Law would be a mere conclusion and would not justify a court to grant an application for a special panel. (*People* v. *Brandenburg,* 75 N. Y. S. 2d 851.) The granting of a motion for a special or "Blue Ribbon" jury should be reserved for cases where the facts before the court upon an application for a special jury clearly indicate the propriety thereof. (*People* v. *Van Arsdale,* 175 Misc. 980.)

The court at this time deems it appropriate to set forth some of the facts that are alleged in the moving papers submitted by the District Attorney in support of this motion.

The affidavits are made by Julius Helfand, Esq., assistant district attorney who is in charge of the present investigation concerning alleged gambling in our county.

In the moving papers the District Attorney alleges as follows:

1. That in or about the month of December, 1949, the *Brooklyn Eagle,* an outstanding newspaper in the county of Kings, published a series of articles tending to establish that organized syndicates composed of criminals and racketeers were conducting their nefarious activities within this county and deploring

the failure of the properly constituted law enforcement agencies to suppress such activities. More particularly these articles charged:

2. That an organized syndicate of gamblers and racketeers has operated and still operates on a large scale in this county with the consent or connivance of the members of the police department and that thousands of dollars were and are paid annually for so-called protection of said activities.

3. That embraced within the activities of said syndicate was the organized distribution and sale of betting cards in various educational institutions within the county and that pools and other forms of gambling were prevalent in such institutions. Under such circumstances there was and is grave and imminent danger that the minds of the adolescents in said educational institutions would be infected with the fever of gambling which might lead to other forms of vice; that the operation of said syndicate was calculated to foster such illegal activities among the students in such institutions.

The moving papers further allege that these articles caused considerable public comment and aroused the indignation not only of well-informed, responsible and public spirited citizens of this county, but of various public officials and subsequently concerted demands were made by responsible civic organizations, members of this community, and the daily press, that the truth or falsity of said newspaper articles be ascertained and if the substance of said articles be true that the criminal activities set forth therein be suppressed immediately and the person or persons responsible for such activities be vigorously prosecuted therefor.

It further appears from the moving papers that the Grand Jury regularly impanelled for the month of December, 1949, requested the District Attorney to appear before their body for a conference concerning the subject matter of said articles. That such conferences were held and the Grand Jury advised the District Attorney that they were gravely concerned with the charges contained in said newspaper's articles and expressed their belief that an investigation into the alleged organized criminal activities was imperative. It further appears from the moving papers that the District Attorney prior to his conference with the Grand Jury had conferred with various persons connected with the educational institutions in this county and with the chief inspector of the police department of the city of New York for the purpose of commencing preliminary investigations with respect to these allegations contained in the said

newspaper articles dealing with gambling in schools. It is further alleged that the conferences held by the District Attorney with the Grand Jury as aforesaid led to the conclusion that the investigation suggested by the Grand Jury was essential in the interests of justice.

Upon being apprised of these alleged allegations of conditions in this county the District Attorney promptly made application to the board of estimate of the city of New York for an appropriation of moneys to enable him to hire additional assistants and investigators to enable him to make a thorough and competent investigation and prosecution of the person or persons responsible for this alleged shocking condition in our county. The request of the District Attorney for such appropriation was promptly granted by the Mayor and the board of estimate of the city of New York. The District Attorney soon thereafter set up a special staff of assistants and investigators under the direct charge of Assistant District Attorney Julius Helfand.

It further appears that on December 20, 1949, the District Attorney appeared at Part 6 of this court and requested that the December, 1949, Grand Jury be extended to March 31, 1950, for the purpose of investigating the allegations contained in said series of articles. The application was granted and an order duly made extended the term of said Grand Jury so as to permit the completion of the investigation then pending before it. Said order provided in part as follows: "That said term be extended to the 31st day of March, 1950, to permit the Grand Jury to complete the investigation commenced by said body, and it further appearing that the investigation commenced by said Grand Jury and not completed is, to wit: the alleged activities of criminals, racketeers and gamblers within the County of Kings and every and all matters affecting and appertaining thereto."

Pursuant to an order entered in this court in March, 1950, the term of said Grand Jury was further extended to September 30, 1950.

The indictment in this case is a direct result of this investigation. The District Attorney further alleges that the issues involved in this indictment are concerned directly with the existence of organized crime in this county, particularly with reference to gambling among the students in our educational institutions. He further alleges that count 1 of the indictment charges the crime of conspiracy and sets forth fifteen overt acts, each requiring independent evidence to establish it. That the remaining seventeen counts charge specific violations as dis-

tinguished from conspiracy, requiring independent proof for each count.

If the conditions as to alleged gambling in this county actually exist, they should be eradicated with the utmost speed. It further appears that the District Attorney of this county, upon being apprised of this alleged condition of gambling, moved with speed and diligence to make a thorough investigation to ascertain the truth or falsity of these alleged gambling conditions and prosecute the persons responsible.

The contention of the defendants that the granting of this application is in violation of the due process clause of both State and Federal Constitutions is without merit. Section 749-aa of the Judiciary Law does not violate the 14th Amendment. (*Moore* v. *New York,* 333 U. S. 565; *Fay* v. *New York,* 332 U. S. 261.) In the *Fay* case, the court stated (pp. 268–269) as follows: " The special jury panel is not one brought into existence for this particular case nor for any special class of offenses or type of accused. It is a part of the regular machinery of trial in counties of one million or more inhabitants. In its sound discretion the court may order trial by special jury on application of either party in a civil action and by either the prosecution or defense in criminal cases. The motion may be granted only on a showing that ' by reason of the importance or intricacy of the case, a special jury is required ' or ' the issue to be tried has been so widely commented upon . . . . that an ordinary jury cannot without delay and difficulty be obtained ' or that for any other reason ' the due, efficient and impartial administration of justice in the particular case would be advanced by the trial of such an issue by a special jury.' "

The court is not concerned on this application with whether or not book-making is a heinous crime or whether the general public has an apathy towards book-making or other forms of gambling. The law makes it illegal. Section 9 of article I of our State Constitution provides in part as follows: " No lottery or the sale of lottery tickets, pool-selling, book-making, or any other kind of gambling, except pari-mutuel betting on horse races, as may be prescribed by the legislature and from which the state shall derive a reasonable revenue for the support of government, shall hereafter be authorized or allowed within this state; and the legislature shall pass appropriate laws to prevent offenses against any of the provisions of this section."

Since the adoption of our State Constitution as proposed by the Constitutional Convention of 1894, a sweeping prohibition against gambling has been a part of the organic laws of the

State. Until book-making or any other form of gambling is legalized by appropriate action on the part of the people of the State and the Legislature, it is the duty of our law enforcement officers to uphold this prohibition against gambling. The office of the District Attorney and the police department have one common duty to perform in connection with illegal book-making, namely, to wipe it out completely by arresting and convicting all book-makers operating within the limits of our city.

The fact that the crimes charged are misdemeanors, in no way affects the propriety of ordering the impanelling of a special jury. In the case of *People* v. *Stemmer* (55 N. Y. S. 2d 160) decided by a Judge of this court the court stated (p. 162): " The statute does not limit the application to the type of crime charged. It is the opinion of the Court, that special circumstances in a charge involving a misdemeanor may justify a trial by a special jury."

In the case of *People* v. *Elia* (173 Misc. 1076, 1078) the court stated as follows: " The gist of the argument in opposition to the granting of the motion for a special panel is that special or blue ribbon juries are convicting juries. There is no merit to this argument as is evidenced by the recent results in Kings County. The real objection to a special panel seems to be that they are selected after a more careful examination by the commissioner of jurors, and are supposed to be individuals of superior intelligence. Why this condition should work to the detriment of the defendants is something hard to understand. * * * There is no reason why members of the special panel should have any prejudice against them."

The defendants also claim that this motion is one of novel impression. The defendants urge upon this court that this is the first time in the history of the State that a District Attorney has made an application for a special panel in a book-making case. This, of course, does not afford judicial basis for the denial thereof. As Judge POUND said in *300 West End Ave. Corp.* v. *Warner* (250 N. Y. 221, 226): " Law taken for granted or dogmatically asserted is an unsafe guide for future judicial action."

In passing upon this application the court wants to make it clear that it has of course no opinion whatsoever as to the guilt or innocence of the defendants. They will continue to be presumed innocent until proven guilty. The only question to be determined by the court is the propriety of the court's exercising its discretion in this case to grant this application.

Most of the arguments adduced by counsel for the defendants against the granting of this application are concerned with the wisdom of retaining the blue ribbon jury panel statute on the books. But those are matters for the Legislature to consider and can be of no moment on this application. If any of the reasons contained in the statute exist, the court is justified in granting the motion.

The court has carefully studied the affidavits submitted for and in opposition to this application as well as the briefs submitted by learned counsel. The court is of the opinion that there is no reason why members of a special panel should have any prejudice against the defendants and that the defendants can receive a fair trial before such panel.

Since the Grand Jury has, in its discretion elected to prosecute these defendants by indictment in this court instead of by information in the Court of Special Sessions, the court must presume that it had adequate reasons for so doing. The presence of a conspiracy count added to the facts set forth in the moving affidavits, affords adequate reason for the result here reached.

After due deliberation and consideration of the facts before it, the court is of the opinion that the due, efficient and impartial administration of justice would be advanced by the trial of the issues herein by a special jury.

The defendants claim that they would be seriously prejudiced by the fact that the District Attorney will use a card index file relating to each of the prospective jurors during the selection of the jury. I intend that the defendants shall have access to any information concerning a prospective juror that will be available to the prosecutor and shall so direct during the choosing of the jury.

The application of the District Attorney for a special panel is therefore granted. Submit Order.